1

2

3

4

5

6

7

8                    **UNITED STATES DISTRICT COURT**

9                    **CENTRAL DISTRICT OF CALIFORNIA**

10                   **WESTERN DIVISION**

11

12   NICOLETA S.,                     )    No. CV 20-5365-PLA
                                       )
13                   Plaintiff,        )    **MEMORANDUM OPINION AND ORDER**
                                       )
14          v.                         )
                                       )
15   ANDREW M. SAUL, COMMISSIONER      )
     OF SOCIAL SECURITY                )
16   ADMINISTRATION,                   )
                                       )
17                   Defendant.        )
     ──────────────────────────────   )

18

19                              **I.**

20                         **PROCEEDINGS**

21          Nicoleta S.[1] ("plaintiff") filed this action on June 16, 2020, seeking review of the

22   Commissioner's denial of her applications for a period of disability and Disability Insurance

23   Benefits ("DIB") and Supplemental Security Income ("SSI") payments.  The parties filed Consents

24   to proceed before a Magistrate Judge on July 7, 2020, and July 10, 2020.  Pursuant to the Court's

25   Order, the parties filed a Joint Submission (alternatively "JS") on February 10, 2021, that

26   ────────────────

27          [1]    In the interest of protecting plaintiff's privacy, this Memorandum Opinion and Order uses
     plaintiff's (1) first name and last initial, and (2) year of birth in lieu of a complete birth date.  See
28   Fed. R. Civ. P. 5.2(c)(2)(B), Local Rule 5.2-1.

addresses their positions concerning the disputed issue in the case.  The Court has taken the Joint

Submission under submission without oral argument.


## II.

## BACKGROUND

Plaintiff was born in 1976.  [Administrative Record ("AR") at 156, 158.]  She has past

relevant work experience as a registration clerk.  [Id. at 26, 54-55.]

On July 13, 2017, plaintiff protectively filed an application for a period of disability and DIB

and for SSI payments alleging that she has been unable to work since July 12, 2017.  [Id. at 14;

see also id. at 156-67, 158-63.]  After her applications were denied initially, plaintiff timely filed a

request for a hearing before an Administrative Law Judge ("ALJ").  [Id. at 95-97.]  A hearing was

held on May 31, 2019, at which time plaintiff appeared represented by an attorney, and testified

on her own behalf.  [Id. at 32-61.]  A vocational expert ("VE") also testified.  [Id. at 51-59.]  On July

2, 2019, the ALJ issued a decision concluding that plaintiff was not under a disability from July 12,

2017, the alleged onset date, through July 2, 2019, the date of the decision.  [Id. at 14-27.]

Plaintiff requested review of the ALJ's decision by the Appeals Council.  [Id. at 152-55.]  When the

Appeals Council denied plaintiff's request for review on April 16, 2020 [id. at 1-5], the ALJ's

decision became the final decision of the Commissioner.  See Sam v. Astrue, 550 F.3d 808, 810

(9th Cir. 2008) (per curiam) (citations omitted).  This action followed.


## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's

decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial

evidence or if it is based upon the application of improper legal standards.  Berry v. Astrue, 622

F.3d 1228, 1231 (9th Cir. 2010) (citation omitted).

"Substantial evidence . . . is 'more than a mere scintilla[,]' . . . [which] means -- and means

only -- 'such relevant evidence as a reasonable mind might accept as adequate to support a

1  conclusion.'"  Biestek v. Berryhill, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019) (citations

2  omitted); Revels v. Berryhill, 874 F.3d 648, 654 (9th Cir. 2017).  "Where evidence is susceptible

3  to more than one rational interpretation, the ALJ's decision should be upheld."  Revels, 874 F.3d

4  at 654 (internal quotation marks and citation omitted).  However, the Court "must consider the

5  entire record as a whole, weighing both the evidence that supports and the evidence that detracts

6  from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum

7  of supporting evidence."  Id. (quoting Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014)

8  (internal quotation marks omitted)).  The Court will "review only the reasons provided by the ALJ

9  in the disability determination and may not affirm the ALJ on a ground upon which he did not rely."

10  Id. (internal quotation marks and citation omitted); see also SEC v. Chenery Corp., 318 U.S. 80,

11  87, 63 S. Ct. 454, 87 L. Ed.  626 (1943) ("The grounds upon which an administrative order must

12  be judged are those upon which the record discloses that its action was based.").

14  **IV.**

15  **THE EVALUATION OF DISABILITY**

16  Persons are "disabled" for purposes of receiving Social Security benefits if they are unable

17  to engage in any substantial gainful activity owing to a physical or mental impairment that is

18  expected to result in death or which has lasted or is expected to last for a continuous period of at

19  least twelve months.  Garcia v. Comm'r of Soc. Sec., 768 F.3d 925, 930 (9th Cir. 2014) (quoting

20  42 U.S.C. § 423(d)(1)(A)).

22  **A.    THE FIVE-STEP EVALUATION PROCESS**

23  The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing

24  whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920; Lounsbury v. Barnhart, 468

25  F.3d 1111, 1114 (9th Cir. 2006) (citing Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999)).

26  In the first step, the Commissioner must determine whether the claimant is currently engaged in

27  substantial gainful activity; if so, the claimant is not disabled and the claim is denied.  Lounsbury,

28  468 F.3d at 1114.  If the claimant is not currently engaged in substantial gainful activity, the

second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. § 404, subpart P, appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that she is unable to perform past relevant work. Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992). If the claimant meets this burden, a prima facie case of disability is established. Id. The Commissioner then bears the burden of establishing that the claimant is not disabled because there is other work existing in "significant numbers" in the national or regional economy the claimant can do, either (1) by the testimony of a VE, or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. part 404, subpart P, appendix 2. Lounsbury, 468 F.3d at 1114. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 721, 828 n.5 (9th Cir. 1995); Drouin, 966 F.2d at 1257.

**B.    THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since July 12, 2017, the alleged onset date.[2] [AR at 17.] He noted that in June 2017, plaintiff returned to part-time work in the third and fourth quarter of 2017, and the first quarter of 2018. [Id. (citations omitted).] He also noted plaintiff's testimony that while at work she was unable to concentrate,

---

[2]    The ALJ concluded that plaintiff meets the insured status requirements of the Social Security Act through December 31, 2021. [AR at 1616.]

made mistakes, and could not tolerate the pain, and after a few months plaintiff's supervisor told her that she "could no longer honor [plaintiff's] accommodations." [Id. (citations omitted).]  Plaintiff then took a medical retirement.  [Id. (citation omitted).]  The ALJ classified this as an "unsuccessful work attempt" because plaintiff "did not work for several months, attempted to return to work with accommodations for less than six months, and the work ended because of the removal of the accommodations."  [Id.]  At step two, the ALJ concluded that plaintiff has the severe impairments of status-post right tibia and right hip fractures post open reduction internal fixation surgery; degenerative disc disease of the lumbar spine; right shoulder injury status-post motor vehicle accident[3]; and fibromyalgia.  [Id.]  He found her medically determinable physical impairments of pulmonary embolisms and left carotid artery dissection (also resulting from the accident), and her medically determinable mental impairment of depression, to be nonsevere.  [Id.]  At step three, the ALJ determined that plaintiff does not have an impairment or a combination of impairments that meets or medically equals any of the impairments in the Listing.  [Id. at 20.]  The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[4] to perform light work as defined in 20 C.F.R. § 404.1567(b),[5]

---

[3]     On November 16, 2016, plaintiff was a passenger in an automobile that was "T-boned" on plaintiff's side of the vehicle when it was hit by a drunk driver.  [AR at 1093.]  She was hospitalized for approximately two weeks following the accident, which fractured her right tibia and right hip. [Id. at 22 (citations omitted).]  Plaintiff underwent "a right pubic and right tibia open reduction internal fixation surgery," and was released to a skilled nursing facility on November 25, 2016.  [Id.] On December 9, 2016, she was released from the skilled nursing facility.  [Id. (citations omitted).]

[4]     RFC is what a claimant can still do despite existing exertional and nonexertional limitations.  See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).  "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity."  Massachi v. Astrue, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007) (citation omitted).

[5]     "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."

(continued...)

except standing and walking is limited to four hours in an eight-hour workday.  She must be able to alternate between sitting and standing at the workstation and must be able to use a cane as needed for ambulation.  [She] is capable of occasional postural activities, but cannot climb ladders, scaffolds or ropes and cannot work at unprotected heights.  She is capable of occasional above the shoulder work with the right upper extremity and occasional use of foot pedals or controls with the right lower extremity.

[Id. at 21.]  At step four, based on plaintiff's RFC and the testimony of the VE, the ALJ concluded that plaintiff is able to perform her past relevant work as a registration clerk as actually and generally performed.  [Id. at 26, 55-57.]  Accordingly, the ALJ determined that plaintiff was not disabled at any time from the alleged onset date of July 12, 2017, through July 2, 2019, the date of the decision.  [Id. at 27.]

## V.

## THE ALJ'S DECISION

Plaintiff contends that the ALJ erred when he rejected plaintiff's subjective symptom testimony.  [JS at 4.]  As set forth below, the Court respectfully disagrees with plaintiff and affirms the decision of the ALJ.

## A.    BACKGROUND

Plaintiff contends the ALJ failed to articulate legally sufficient reasons for rejecting plaintiff's subjective symptom testimony.  [Id.]

The ALJ summarized plaintiff's testimony as follows:

[She] testified she has pain in her back, right shoulder, and right leg and bilateral ankle swelling.  She explained that the pain in her right shoulder prevents her from raising her arm above the shoulder level.  She further explained that the pain in her back and leg make it difficult to sit and she estimated that she could sit for four to five minutes before needing to stand.  She also testified that walking causes pain in her back and right leg, but on a good day, she is able to walk her dog or go to the store.  [She] testified that she has a walker and a cane, but she only uses the walker in the house because she is embarrassed to use it in public.  She further explained

_____

[5](...continued)
20 C.F.R. §§ 404.1567(b), 416.967(b).  Light work requires standing or walking, off and on, for a total of approximately six hours of an eight-hour workday.  Soc. Sec. Ruling 83-10, 1983 WL 31251, at *5-6 (Jan. 1, 1983).

1  that she uses the cane every day and estimated that she could take approximately two or three steps without it.  [She] believes that she is unable to work because she is in constant pain, which makes it difficult to concentrate.  Although [plaintiff] has good and bad days, she testified that she has good days only once or twice a week.

2

3

4  Plaintiff lives with her four children.  She can occasionally start the dishes, but relies on her children to do the household chores and most of the cooking.  She also relies on her oldest daughter to help her dress and bathe.  She is able to go shopping, but needs to use an electric shopping cart.  During the day, [she] rests and tries to prepare food for her children.  She explained that she spends most of the day laying down because she can only sit comfortably for approximately ten minutes.  [She] watches television and listens to music to pass the time, but she cannot follow along with the television plots.  [She] is able to drive short distances.  She goes to church on Sunday and has an emotional support dog, but her daughter takes care of the dog.

5

6

7

8

9  [Id.]

10  The ALJ discounted plaintiff's subjective symptom testimony as follows:

11  After careful consideration of the evidence, the undersigned finds that [plaintiff's] medically determinable impairments could reasonably be expected to cause some symptoms; however [her] statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

12

13

14  [Id.]

15

16  **B.   LEGAL STANDARD**

17  Prior to the ALJ's assessment in this case, Social Security Ruling ("SSR")[6] 16-3p went into

18  effect.  See SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017).[7]  SSR 16-3p supersedes SSR 96-7p,

19  the previous policy governing the evaluation of subjective symptoms.  SSR 16-3p, 2017 WL

20  5180304, at *2.  SSR 16-3p indicates that "we are eliminating the use of the term 'credibility' from

21  our sub-regulatory policy, as our regulations do not use this term."  Id.  Moreover, "[i]n doing so,

22  we clarify that subjective symptom evaluation is not an examination of an individual's character[;]

23

24  [6]   "SSRs do not have the force of law.  However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference.  We will not defer to SSRs if they are inconsistent with the statute or regulations."  Holohan v. Massanari, 246 F.3d 1195, 1202 n.1 (9th Cir. 2001) (citations omitted).

25

26  [7]   SSR 16-3p, originally "effective" on March 28, 2016, was republished on October 25, 2017, with the revision indicating that SSR 16-3p was "applicable [rather than effective] on March 28, 2016."  See 82 Fed. Reg. 49462, 49468 & n.27, 2017 WL 4790249, at *49462  (Oct. 25, 2017); SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017).

27

28

1   [i]nstead, we will more closely follow our regulatory language regarding symptom evaluation." Id.;

2   Trevizo v. Berryhill, 871 F.3d 664, 678 n.5 (9th Cir. 2017).  Thus, the adjudicator "will not assess

3   an individual's overall character or truthfulness in the manner typically used during an adversarial

4   court litigation.  The focus of the evaluation of an individual's symptoms should not be to determine

5   whether he or she is a truthful person."  SSR 16-3p, 2017 WL 5180304, at *11.  The ALJ is

6   instructed to "consider all of the evidence in an individual's record," "to determine how symptoms

7   limit ability to perform work-related activities."  Id. at *2.  The Ninth Circuit also noted that SSR 16-

8   3p "makes clear what our precedent already required:  that assessments of an individual's

9   testimony by an ALJ are designed to 'evaluate the intensity and persistence of symptoms after [the

10  ALJ] find[s] that the individual has a medically determinable impairment(s) that could reasonably

11  be expected to produce those symptoms,' and 'not to delve into wide-ranging scrutiny of the

12  claimant's character and apparent truthfulness.'" Trevizo, 871 F.3d at 678 n.5 (citing SSR 16-3p).

13  Thus, while SSR 16-3p eliminated the use of the term "credibility," case law using that term is still

14  instructive in the Court's analysis.

15       To determine the extent to which a claimant's symptom testimony must be credited, the

16  Ninth Circuit has "established a two-step analysis." Trevizo, 871 F.3d at 678 (citing Garrison, 759

17  F.3d at 1014-15).  "First, the ALJ must determine whether the claimant has presented objective

18  medical evidence of an underlying impairment which could reasonably be expected to produce the

19  pain or other symptoms alleged." Id. (quoting Garrison, 759 F.3d at 1014-15); Treichler v. Comm'r

20  of Soc. Sec. Admin., 775 F.3d 1090, 1102 (9th Cir. 2014) (quoting Lingenfelter v. Astrue, 504 F.3d

21  1028, 1036 (9th Cir. 2007)) (internal quotation marks omitted).  If the claimant meets the first test,

22  and the ALJ does not make a "finding of malingering based on affirmative evidence thereof"

23  (Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006)), the ALJ must "evaluate the

24  intensity and persistence of [the] individual's symptoms . . . and determine the extent to which

25  [those] symptoms limit [her] . . . ability to perform work-related activities . . . ." SSR 16-3p, 2017

26  WL 5180304, at *4.  In assessing the intensity and persistence of symptoms, the ALJ must

27  consider a claimant's daily activities; the location, duration, frequency, and intensity of the pain or

28  other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness and side

effects of medication taken to alleviate pain or other symptoms; treatment, other than medication received for relief of pain or other symptoms; any other measures used to relieve pain or other symptoms; and other factors concerning a claimant's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 416.929; see also Smolen v. Chater, 80 F.3d 1273, 1283-84 & n.8; SSR 16-3p, 2017 WL 5180304, at *4 ("[The Commissioner] examine[s] the entire case record, including the objective medical evidence; an individual's statements . . . ; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record.").

Where, as here, plaintiff has presented evidence of an underlying impairment, and the ALJ did not make a finding of malingering, the ALJ's reasons for rejecting a claimant's subjective symptom statements must be specific, clear, and convincing. Brown-Hunter v. Colvin, 806 F.3d 487, 488-89 (9th Cir. 2015); Burrell v. Colvin, 775 F.3d 1133, 1136 (9th Cir. 2014) (citing Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012)); Trevizo, 871 F.3d at 678 (citing Garrison, 759 F.3d at 1014-15); Treichler, 775 F.3d at 1102. "General findings [regarding a claimant's credibility] are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." Burrell, 775 F.3d at 1138 (quoting Lester, 81 F.3d at 834) (quotation marks omitted). The ALJ's findings "'must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain.'" Brown-Hunter, 806 F.3d at 493 (quoting Bunnell v. Sullivan, 947 F.2d 341, 345-46 (9th Cir. 1991) (en banc)). A "reviewing court should not be forced to speculate as to the grounds for an adjudicator's rejection of a claimant's allegations of disabling pain." Bunnell, 947 F.2d at 346. As such, an "implicit" finding that a plaintiff's testimony is not credible is insufficient. Albalos v. Sullivan, 907 F.2d 871, 874 (9th Cir. 1990) (per curiam).

In determining whether an individual's symptoms will reduce her corresponding capacities to perform work-related activities or abilities to function independently, appropriately, and effectively in an age-appropriate manner, the ALJ "will consider the consistency of the individual's own statements." SSR 16-3p, 2017 WL 5180304, at *8-9; see also Ghanim v. Colvin, 763 F.3d

1154, 1163-64 (9th Cir. 2014).  In doing so, the ALJ "will compare statements an individual makes in connection with the individual's claim for disability benefits with any existing statements the individual made under other circumstances."   SSR 16-3p, 2017 WL 5180304, at *8.   "If an individual's various statements about the intensity, persistence, and limiting effects of symptoms are consistent with one another and consistent with the objective medical evidence and other evidence in the record," the ALJ will determine that an individual's symptoms are more likely to reduce her capacities for work-related activities or reduce the abilities to function independently, appropriately, and effectively in an age-appropriate manner.  Id. at *9.  The ALJ will recognize, however, that inconsistencies in an individual's statements made at varying times "does not necessarily mean they are inaccurate," as symptoms may vary in their intensity, persistence, and functional effects, or may worsen or improve with time.  Id.

Here, in discounting plaintiff's testimony, the ALJ specifically noted the following:  (1) plaintiff's complaints of continuous pain in her right lower extremity are belied by x-rays and physical examinations noting improvement in her condition, and that her leg was healing correctly and her condition improving; (2) plaintiff's treatment has been conservative, "with some progress noted," and plaintiff noted that her pain decreased with physical therapy exercises and she believed that her pain management classes were helping; and (3) plaintiff's "consultative examinations were essentially normal with only minor limitations."  [AR at 22-23.]

## C.    THE PARTIES' CONTENTIONS

Plaintiff argues that although the ALJ considered plaintiff's testimony regarding an inability to concentrate with respect to her physical pain symptoms, he did not consider that testimony with respect to the August 30, 2017, findings of the psychiatric consultative examiner, Norma R. Aguilar, M.D. [id. at 1071-76], and the October 29, 2018, findings of the psychological consultative examiner, Rosa Colonna, Ph.D. [id. at 1092-98].

Specifically, plaintiff notes that although the ALJ considered plaintiff's physical impairments and treatments in relation to her testimony, he did so by comparing "the neurovascular findings to the complaints of significant pain interfering with concentration, summarizing the medical

1    evidence of treatment prior to July 12, 2017." [JS at 6-7 (citing AR at 22).] She notes that the ALJ

2    acknowledged that plaintiff used "slow release morphine and oxycodone in the period through

3    June 2017"; that she continued to attend physical therapy and pain management classes in 2018

4    and 2019 and "had some benefit" from those [id. at 7 (citing AR at 23)]; and that he "focused on

5    the results of physical consultative examinations, the suggestion of improvement in the ability to

6    ambulate, [and] the continued need for use of a cane." [Id. (citing AR at 23).]

7          Plaintiff observes that the ALJ, however, "*did not include* consideration of the testimony

8    about the inability to engage in the concentration required to perform [plaintiff's] past semi-skilled

9    work to [Dr. Aguilar's] findings of digit span recall of three digits forwards and backwards or the

10   inability to spell the word *music* backwards." [Id. (emphasis in original) (citing AR at 1075).] She

11   states that the ALJ also did not include Dr. Colonna's October 2018 mental status examination

12   findings in his assessment "of [plaintiff's] complaints of inability to concentrate sufficiently to

13   perform past semi-skilled work." [Id.] She argues that Dr. Colonna's mental status evaluation

14   reflected a moderate decrease in plaintiff's "immediate, intermediate, and remote recall," and a

15   finding that plaintiff's attention and concentration is "moderately diminished." [Id. (citing AR at

16   1095).] She points out that Dr. Colonna "diagnosed a pain disorder with physical and

17   psychological factors," described plaintiff "as having mild limitations in performing detailed

18   instructions and described a capacity for simplistic work-related decision-making without special

19   supervision." [Id. (citing AR at 1098).]

20         Plaintiff further contends that her past relevant work as a registration clerk requires

21   "reasoning level 3, the ability to perform more complex tasks." [Id. (citing Dictionary of Occupation

22   Titles ("DOT") No. 205.367-042).] She argues that the consultative psychiatric examination

23   conducted by Dr. Aguilar and the consultative psychological examination conducted by Dr.

24   Colonna,

25         provide objective support for the testimony that [plaintiff] lacked the concentration
           to perform work duties as a registration clerk or such other work requiring similar
26         concentration and memory function. The ALJ was uncritical of Drs. Aguilar and
           Colonna. Because the ALJ did not properly consider [plaintiff's] testimony in the
27         context of the psychiatric and psychological findings, the ALJ erred [because he did
           not articulate legally sufficient reasons for rejecting plaintiff's testimony regarding her
28         inability to concentrate].

[Id. at 8 (citing AR at 18-19); see also AR at 1072-76, 1092-98.]

Defendant responds that substantial evidence supports the ALJ's reasons for discounting plaintiff's subjective symptom testimony. [JS at 9.] Defendant summarized the ALJ's statements relating to plaintiff's treatment and improvement with respect to her (a) fracture of her right tibia and right hip in an automobile accident [id. (citing AR at 22, 328, 337)]; (b) back and leg complaints [id. at 10-11 (citations omitted)]; and (c) conservative treatment for her orthopedic impairments and fibromyalgia.  [Id. at 11-12 (citations omitted).]

Defendant suggests that plaintiff "does not challenge the ALJ's articulated rationale for discounting her statements in any way," but instead "contends that the ALJ should have accepted her testimony that she had difficulty concentrating because that testimony was supported by the opinions of two consultative examiners -- Drs. Aguilar and Colonna." [Id. at 12 (citing AR at 1072-76, 1092-98).]  He argues that the ALJ expressly considered plaintiff's statements regarding concentration problems at step two, and explained that he found plaintiff "only mildly impaired in that respect due to consistently normal mental status examinations, and Drs. Aguilar and Colonna's reports." [Id. (citing AR at 19).]  Defendant argues that plaintiff's failure to address the ALJ's findings at step two -- that plaintiff's mental impairments were nonsevere -- amounts to waiver of that issue. [Id. (citing Avenneti v. Barnhart, 456 F.3d 1122, 1125 (9th Cir. 2006)).]

Defendant further contends that the two consultative reports "do not support Plaintiff's statements anyway." [Id. at 13 (citing AR at 18-19, 1075, 1095, 1097).]  He argues that although plaintiff alleges significant concentration defects that affect her ability to work, Dr. Aguilar reported that plaintiff was able to recall three out of three objects immediately and after five minutes; her digit span was 3 digits forward and 3 digits back; she could perform serial sevens; and she could spell the word "music" forward but not backward.  [Id. (citing AR at 1075).]  Dr. Aguilar found plaintiff had no limitation with respect to following simple or detailed instructions, interacting appropriately with others, and complying with job rules, and only mild limitation with respect to responding to changes and pressures in a usual work setting, and performing activities of daily living. [Id. (citing AR at 1076).]  Similarly, Dr. Colonna found plaintiff capable of handling short instructions without difficulty and without special supervision, and opined that she had only mild

difficulty with respect to handling detailed instructions, and interacting with others.  [Id. (citing AR at 1098).]  Although she assessed plaintiff with "moderately diminished memory and attention and concentration," she also noted that the test results "may be an under estimation of [plaintiff's] ability at this time."  [Id. (citing AR at 1095, 1097).]

With respect to plaintiff's argument that she is unable to perform her past work as a registration clerk because her concentration deficits render her incapable of doing a job with a reasoning level of 3, defendant argues that the opinions of Dr. Aguilar and Dr. Colonna are "consistent with the ability to perform work at this level."  [Id. at 14 (citing DOT No. 205.367-042).] Additionally, defendant notes that both doctors agreed that plaintiff "had no problem handling short or simple work, without supervision, Dr. Aguilar believed Plaintiff could handle detailed instructions, and Dr. Colonna believed Plaintiff had only mild difficulty in that regard."  [Id.] Defendant concludes, therefore, that plaintiff's "contention that her concentration deficits would preclude work as a registration clerk is entirely unfounded."  [Id.]

Plaintiff responds that the "proper juxtaposition is the ALJ rejection of [plaintiff's] symptoms and limitations and the ALJ acceptance that [plaintiff] tried to work in the fourth quarter of 2017 and first quarter of 2018 but that the attempt failed for reasons related to her impairments."  [Id.] She notes that the ALJ did "not address the unsuccessful work attempt and [plaintiff's] accepted statements that she could not tolerate the demands of work and the limitations imposed."  [Id.] She suggests that the ALJ made "inconsistent findings accepting the testimony that [plaintiff] could not work without accommodations but the [sic] she could work without accommodations."  [Id.]

**D.    ANALYSIS**

To begin with, and insofar as the Court understands it, plaintiff appears to be arguing in her reply that although the ALJ rejected plaintiff's subjective symptom testimony, he accepted the fact that in 2017 and 2018 she had an "unsuccessful work attempt" because her impairments and resulting limitations could no longer be accommodated by her employer.  According to plaintiff, this resulted in an inconsistency in that the ALJ determined plaintiff was capable of performing her past work, but it was clear from her "unsuccessful work attempt" -- which he acknowledged -- that she

1   was *not* able to do so.  [Id. at 14.]

2   This reply argument, however,  was not apparent in plaintiff's opening statement regarding

3   this issue. To the extent plaintiff is raising a new argument in her reply, her contentions are waived

4   and the Court need not consider them.  See Eberle v. City of Anaheim, 901 F.2d 814, 818 (9th Cir.

5   1990) ("It is well established in this circuit that the general rule is that appellants cannot raise a

6   new issue for the first time in their reply briefs.") (citation and internal quotation marks omitted);

7   Thrasher v. Colvin, 611 F. App'x 915, 918 (9th Cir. 2015) (finding Social Security claims waived

8   when raised for the first time in a reply brief) (citing Smith v. Marsh, 194 F.3d 1045, 1052 (9th Cir.

9   1999)); Carter v. Astrue, 413 F. App'x 899, 906 (9th Cir. 2011) (same).  Even if the Court were to

10  consider this argument, the ALJ did not find that plaintiff is able to perform her past relevant work

11  with  no  accommodations  --  he  in  fact  determined  that  plaintiff  needs  a  number  of

12  accommodations: she has standing and walking limitations, requires the ability to alternate sitting

13  and standing, must be able to use her cane as needed, can only do occasional postural activities,

14  cannot climb ladders, scaffolds, or ropes, cannot work at unprotected heights, can only do

15  occasional above-the-shoulder work with the right upper extremity, and can only occasionally use

16  foot pedals or controls with the right lower extremity.  Plaintiff provides no evidence as to the

17  accommodations her employer had been providing to her, and no evidence that the supervisor's

18  determination that plaintiff's limitations could no longer be accommodated had anything at all to

19  do with plaintiff's ability to concentrate, which is the only issue raised herein.

20  Additionally, the Court finds that the opinions of Drs. Aguilar and Colonna fail to support

21  plaintiff's arguments.  For instance, with respect to memory and concentration, Dr. Aguilar found

22  plaintiff was able to recall three out of three objects immediately and in five minutes, her digit span

23  was three digits forward and backward, she was able to perform serial sevens, and she was able

24  to spell the word "music" forward but not backward. [AR at 1075.] Plaintiff implies that these test

25  results were somehow significant with respect to her purported inability to concentrate, yet, based

26  at least in part on these test results as well as her overall evaluation of plaintiff, Dr. Aguilar

27  nevertheless determined that plaintiff was not functionally limited in her abilities to "follow simple,

28  oral and written instruction," follow detailed instruction, interact appropriately with the public, co-

workers, and supervisors, and comply with job-related rules such as safety and attendance.  [Id. at 1076.]  Dr. Aguilar also found plaintiff only "mildly limited" in her abilities to respond to changes in a routine work setting, respond to work pressure in a usual work setting, and in performing her daily activities "due to physical problems."  [Id.]  As noted by plaintiff, the ALJ was "uncritical" of Dr. Aguilar's opinion.  Plaintiff, however, fails to explain how Dr. Aguilar's opinion reflects anything more than a mild limitation in concentrating as found by the ALJ at step two or how her opinion supports plaintiff's allegations of disabling mental impairments.

Similarly, Dr. Colonna noted that plaintiff's mental status evaluation reflected that her attention and concentration were "moderately diminished," and that her "memory is moderately diminished for immediate, intermediate and remote recall."  [Id. at 1095.]  Based on Dr. Colonna's mental status evaluation, as well as on a number of psychological tests that she administered, Dr. Colonna nevertheless concluded that plaintiff would be able to "understand, remember and carry out short, simplistic instructions without difficulty"; had a mild inability to understand, remember and carry out detailed instructions; and would be able to make simplistic work-related decisions without special supervision.  [Id. at 1098.]  She also opined that plaintiff presented with a mild mood and affective disturbance that would present in the job market as a "mild inability to interact appropriately with supervisors, coworkers and peers."  [Id.]  Again, plaintiff fails to explain how Dr. Colonna's opinions reflect anything more than a mild limitation in the ability to concentrate as found by the ALJ or how they support plaintiff's allegations of disabling mental impairments.

Plaintiff's argument that her alleged concentration deficits render her incapable of performing her past work because -- although it does not involve "detailed tasks" -- it requires a reasoning level of 3 and the "ability to perform more complex tasks," is also unavailing.

The DOT defines jobs at Reasoning Level 3 as requiring the ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form.  Deal with problems involving several concrete variables in or from standardized situations."  DOT, app. C.  Courts have found that a limitation to "simple tasks performed at a routine or repetitive pace" may be consistent with Reasoning Level 2.  See, e.g., Meissl v. Barnhart, 403 F. Supp. 2d 981, 984 (C.D. Cal. May 25, 2005) ("While reasoning level two notes the worker must

be able to follow 'detailed' instructions, it also . . . downplayed the rigorousness of those instructions by labeling them as being 'uninvolved.'"). However, "[a]s one goes up the numerical reasoning development scale used by the DOT, the level of detail involved in performing the job increases while the job task becomes less routine." Id. at 983. Thus, Reasoning Level 3 expands the Reasoning Level 2 requirements of being able to follow "uninvolved" oral or written instructions, to include being able to follow instructions in diagrammatic form as well as oral and written forms, and to deal with "*several* concrete variables," as opposed to Level 2's "few concrete variables." DOT, app. C (emphasis added). The Ninth Circuit has determined that Reasoning Level 3 is inconsistent with a limitation to simple, routine, or repetitive work tasks. See Zavalin v. Colvin, 778 F.3d 842, 843-44 (9th Cir. 2015) (holding that there is an "apparent conflict" between the "limitation to simple, routine, or repetitive tasks, on the one hand, and the demands of Level 3 Reasoning, on the other hand").

Here, however, the ALJ did not limit plaintiff to simple, routine, or repetitive tasks. Neither would such a limitation have been warranted by the record. The opinions of Dr. Aguilar and Dr. Colonna both reflect that plaintiff is capable of performing more detailed tasks: Dr. Aguilar specifically found that plaintiff had no limitation with respect to simple or detailed instructions, and Dr. Colonna found no limitation with respect to simple instructions and only a mild limitation with respect to detailed instructions.

Based on the above, plaintiff has failed to identify any error that would warrant remand.

/

/

/

/

/

/

/

/

/

**VI.**

**CONCLUSION**

**IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **denied**; and (2) the decision of the Commissioner is **affirmed**.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.

DATED:  February 19, 2021

_____
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE